Kent SAXON

v.

The UNITED STATES.

No. 56–52.

United States Court of Claims.

Nov. 30, 1954.

David W. Palmer, Panama City, Fla., for plaintiff. Arthur C. Reuter, and

**954**

Prowell, Viosca & Reuter, New Orleans, La., were on the briefs.

Frank J. Keating, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

MADDEN, Judge.

The plaintiff sues for pay, alleging that he was wrongfully separated from his civil service position with the Government in a reduction in force. He began to work for the New Orleans District, Corps of Engineers, as the foreman of an asphalt plant in 1932. An asphalt plant is a floating plant on which an asphalt mix is prepared and from which the mix is placed upon levee slopes or upper banks to prevent erosion. On or about July 26, 1933, civil service status was accorded to the type of position which the plaintiff held. On May 12, 1946, the plaintiff was made a general foreman, Flood Control, Grade 23, a wage board position within the classified civil service.

The plaintiff for some time before and after August 1950, had been assigned to the Flood Fight Planning Section, Operations Division, New Orleans District, Corps of Engineers. He was foreman in charge of Asphalt Repair Unit 221, a small floating plant. In August 1950, Unit 221 was in the hands of the Plant Branch for alterations and repairs. Alterations were to include the installation of a new fuel oil feed system to the burner of the main boiler. The plaintiff claimed that the proposed fuel feed system was dangerous; that it would flare back and injure one who attempted to light it. The Chief, Operations Division, after investigation, disagreed with the plaintiff. On August 15, 1950, the plaintiff was informed by his supervisor that the unit was still under the jurisdiction of the Plant Branch, and that until the alterations were completed and tested, and the unit turned back to the planning section, he should stay off the unit and leave it alone. On the next day the plaintiff went on the unit and attempted to light it. It flared back and he was burned.

The plaintiff on September 12 requested a grievance hearing alleging gross neglect on the part of the Chief, Operations Division. As remedial action the plaintiff requested the disciplining of the Chief for neglect of duty, the correction of the accident report of the flash-back so as to absolve the plaintiff from all blame, and an investigation by the Coast Guard to determine the safety hazards of the boiler on Unit 221. The District Engineer appointed a grievance board. He instructed the board that the plaintiff's request for the disciplining of the Chief, Operations Division, for gross neglect of duty and for failure to obtain Coast Guard approval for the installation of the burner were not proper subjects for the consideration of the grievance board. A date for the hearing was set, but the plaintiff canceled his request for the hearing, giving as his reason the fact that the hearing, as limited, would not cover all phases of his grievance.

The above recital as to the accident to the plaintiff on Unit 221 might seem to be irrelevant, since the plaintiff does not claim to have lost any pay in connection with it. But the plaintiff claims that after he made the charges against the Chief, Operations Division, his superiors became prejudiced against him, and his subsequent separation resulted from that prejudice.

After the repairs on Unit 221 were completed, it was again placed in operation with the plaintiff as foreman in charge. He was directed not to attempt to light the boiler until properly instructed in its operation. When the instructor arrived, the plaintiff reiterated his numerous complaints about the safety of the boiler, and the instructor made some changes in the piping system. Thereafter the unit was operated, apparently satisfactorily, with the plaintiff as foreman.

The revetments, damaged through neglect during the period of the war and by the hurricanes of 1947 and 1948, were repaired during 1948, 1949, and 1950, and that completed the work for

which Unit 221 was created. In 1948 the unit worked 41 percent of the year, in 1949, 33 percent, and in 1950, 17 percent. At the end of 1950 the unit was decommissioned and the positions on it were abolished in conformity with directions from higher authority to eliminate all unnecessary plant, work and positions. All personnel on the unit were laid off except the plaintiff, and one foreman who promptly applied for retirement. The Chief of the Division directed the plaintiff's supervisors to see if they could locate a position within the division to which the plaintiff could be reassigned. No such position was found. Thereupon a Standard Form 52 was prepared, canceling plaintiff's position in the Division. This was not a termination of employment with the New Orleans District. It was a transfer of the plaintiff from the Operations Division to the Personnel Branch for reassignment to any position within the District to which his qualifications and retention credits entitled him.

At the same time that the plaintiff's position as general foreman, Grade 23, was declared surplus, the position of another foreman of the same grade, but in the Construction Division, was declared surplus. That foreman, one Hanks, had retention rights over another foreman, Lane, of the same grade, and also in the Construction Division, and he bumped Lane. Thereupon Lane was declared surplus, and, like the plaintiff, he was turned over to the Personnel Branch for reassignment. Thus two general foremen, Grade 23, were without positions, and were transferred to the Personnel Branch for reassignment in accordance with their retention rights. As was required by the regulations, the Personnel Branch set up a retention register. The extent of the competing areas and competing levels had been predetermined and in use since the original promulgation of the regulations.

On January 4, 1951, the plaintiff was given a "Notice of Probable Separation—Reduction in Force." The notice advised him that he was entitled to any position for which he was qualified and which was held by a person with fewer retention credits. The plaintiff's reaction was that the whole affair was a reprisal resulting from the controversy about the fuel system on Unit 221, and he so wrote to his superiors on January 16. On January 22, the District Engineer wrote the plaintiff assuring him that no reprisals were involved, and that every effort would be made to find him as good a position as possible. On January 23, the plaintiff responded, repeating his charge that the Chief of Operations, the Section Head and the Field Supervisor were all taking revenge on him, and asking what action would be taken against them.

In the same letter the plaintiff pointed out that there were non-civil service foremen working in the District. In fact these were foremen of a lower grade and were temporary construction employees, hired under Schedule A of civil service rules, which meant that they were excepted from the competitive service. The Personnel Branch could have assigned the plaintiff to one of these positions, but did not do so because the plaintiff was a permanent civil service employee, with the rights pertaining to that status; there was a permanent civil service position available in the District, and it was intended that it should be offered to the plaintiff. That being so, if the plaintiff had been offered a temporary position, it would have been in violation of his rights, since it would not have been the best available position to which he was entitled, and we are sure, and the Personnel Branch was, no doubt, sure, that he would have reacted immediately and vigorously to such an offer.

On February 2, 1951, the plaintiff was offered the permanent position of Caretaker, CPC–7, $3,725, Bonnet Carre Spillway, in the Operations Division, Flood Fight Planning Section. The plaintiff contended that it was not the best available position. He was furnished the register which listed all positions in his competitive area, and was asked to point

out any position for which he was qualified and to which his retention points entitled him. He laid claim to a position of Engineer Equipment Inspector, WB–17, Step 5, $1.97 per hour. The Personnel Branch advised him that it thought he was not qualified for that position. It also advised him that if he could obtain a decision of the Civil Service Commission that he was so qualified, he would be given the position. He was given the necessary forms, and was assisted in filling them out. They were sent to the proper official of the Civil Service Commission, who responded that in his opinion the plaintiff was not qualified for the position to which he laid claim.

On February 9, the plaintiff declined the Bonnet Carre Spillway position, asserting that there were higher positions to which he was entitled. He stated that the offer of the lower grade position was an act of reprisal on the part of his prior superiors, and that they would still be his superiors in the offered position. In fact his prior superiors had nothing to do with the offer. The Chief of the Personnel Branch recommended that the plaintiff accept the offer, since then he would remain on the rolls in an active status and it would be possible to transfer or promote him to a higher position when and if one became available. The plaintiff still rejected the offered position.

On February 10, 1951, the plaintiff was notified of his separation from the service effective February 10, because of a reduction in force and of his refusal to accept the offered position.

In the meantime, on February 5, the plaintiff had submitted a request for a grievance hearing, alleging that his removal from Unit 221 was due to reprisals and discriminations, and not to a reduction in force. As remedial action he asked that he be not reduced in grade and salary and that he be assigned to another position at the same grade and salary until Unit 221 began to work again.

On February 7 the District Engineer advised the plaintiff that, in his opinion, he had no grounds for a grievance, and that his letter was not being referred to a grievance committee; that the cancellation of the position of general foreman on Unit 221 was in accordance with his instructions and directives to reduce positions, employees and costs to the minimum; that the laying-off of Unit 221 had his specific approval and that there was no other position of the same grade and salary to which plaintiff could be reassigned, since the holders of all such positions had greater retention rights. The District Engineer informed the plaintiff of his right to appeal the decision, through channels, within ten days.

The plaintiff took a timely appeal to the next higher echelon of command, the President of the Mississippi River Commission. Upon receipt of the appeal in the office of the Lower Mississippi Valley Division of the Corps of Engineers, the Assistant Division Engineer and the Division Personnel Officer were directed to proceed to New Orleans to investigate the plaintiff's complaints and determine whether there had been any violation of his rights. They interviewed the plaintiff. He told them that if he had been offered the job to which he laid claim, that of Engineer Equipment Inspector, and for which he was held not to be qualified, he would not have accepted it. They checked the procedures which had been followed in effecting the plaintiff's separation, and the facts in connection therewith, and determined that the plaintiff's rights had not been violated. They advised him that he had the right to appeal any adverse decision of the Division Engineer to the Chief of Engineers, and to appeal his decision to the Secretary of the Army. The Division Engineer on February 20, 1951, approved the action of the District Engineer in refusing the plaintiff a grievance hearing. He wrote:

"\* \* \* this appears to be a case where the exercise of management prerogative to reduce personnel does not meet with approval of the employee affected. The increase or decrease of the total number of

employees in an organization or segment thereof is the responsibility of management and is not appealable by a subordinate in the absence of showing of the violation of personal rights. There is no such showing in the instant case."

The plaintiff was advised in writing by the District Engineer of his right to appeal from the decision of the Division Engineer, through channels, to the Chief of Engineers within ten days. The plaintiff did not so appeal.

During the summer of 1951 the large asphalt plant of the New Orleans District was reactivated and placed in service. This was not the small Unit 221 on which the plaintiff had worked. In staffing the large plant, the field supervisor in charge hired two non-civil service foremen, under an authority granted by the Civil Service Commission, and described in detail in finding 20. There was also, on the reactivated plant, an opening for a general foreman, Grade 23. Lane was promoted to that position. It will be remembered that Lane had been bumped from such a position in 1950, and had been declared surplus at the same time as the plaintiff. He had fewer retention credits than the plaintiff. But he had been offered by the Personnel Branch, and had accepted, a position of Civil Engineer, GS–7. He had, before that time, qualified for a civil engineer position by taking a competitive examination given by the Civil Service Commission. He was, then, on the active payroll of the District at the time the Grade 23 position on the reactivated plant became open. As we have said, he was given the position.

On September 21, 1951, the plaintiff asked the District Engineer why he had not been considered for employment on the asphalt plant, why Lane had been promoted to general foreman when he had fewer retention credits than the plaintiff, and why Smith, a non-civil service foreman had been appointed to a civil service position, while the plaintiff was on the reserve list. The District Engineer replied that the asphalt plant was expected to work only two months that year, and that all positions not filled by reassignment of permanent employees currently employed were manned by temporary labor on a job employment basis; that Civil Service Regulations did not give preference to former employees in such employments. He said that the plaintiff had been considered, but better qualified persons were available. He said that Lane was a permanent employee currently employed and that as between such a person and a former employee such as the plaintiff, in a lay-off status, retention credits had no application. The District Engineer's interpretation of the regulations was in accord with the way they had always been interpreted.

On October 4, 1951, the plaintiff appealed to the Regional Director, Tenth United States Civil Service Region. On December 11 the Regional Director advised the plaintiff that his rights had not been violated. On January 10, 1952, the plaintiff appealed to the Civil Service Commission. In that appeal the plaintiff asserted that he had been laid off because he had given the General Accounting Office information about alleged misconduct of officials of the Corps of Engineers. He also asserted that the Corps of Engineers was misusing the authority to hire non-civil service employees for temporary work, thus keeping some persons from acquiring civil service status, and keeping civil service employees, such as the plaintiff, out of jobs. The Commission's Board of Appeals and Review, to which the appeal was referred on February 27, 1952, affirmed the decisions of the Regional Director and the District Engineer.

Although the plaintiff did not specify it as a ground of complaint in the proceedings described above, he has asserted in this case that his rights were violated by the Government's handling of the employment status of one Bergeron. Bergeron's history was similar to Lane's, and is recited in finding 24. The plaintiff had no valid ground for complaint about it.

On January 21, 1952, which was 11 months after the decision of the Division Engineer affirming the District Engineer's refusal to grant the plaintiff a hearing in connection with the reduction in force, the plaintiff wrote the Department of the Army, referring to a letter from the Department which had advised him that his case was within the jurisdiction of the Corps of Engineers. He said that the Department had "passed the buck" by referring him to the Corps of Engineers, the same agency which he was accusing of violating his rights.

■ The foregoing long narrative and comment shows that, in our opinion, the plaintiff has no ground for complaint as to his separation, so far as the merits are concerned. We have considered the merits because of the plaintiff's assertion that his separation was an act of reprisal. In now considering whether the plaintiff's procedural rights were violated, we point to one matter that is worthy of discussion.

It will be remembered that promptly after receiving his notice of probable separation because of a reduction in force, the plaintiff requested of the District Engineer a grievance hearing, alleging that his separation was due to reprisal and not to reduction in force. As remedial action he requested:

"(a) that I not be reduced in grade or salary based on the fact that the Asphalt Repair Unit has not been sold or demolished and is merely in a seasonal lay-up status;

"(b) that in view of the practice established in former years, I be reassigned to another position at the same grade and salary until such time as the Asphalt Repair Unit begins work again."

The District Engineer concluded that since the grievance hearing was for the purpose of advising him as to alleged improper treatment of employees in his agency, and since he himself was the one who had ordered the asphalt unit laid up, which order caused the reduction in force, and since the plaintiff could not be retained at the same grade and salary unless he was to be paid without working, he, the District Engineer, would get no useful information from a grievance hearing. He recognized that his superiors could overrule his action as to the laying up of the unit or as to keeping the plaintiff on the payroll though his work was eliminated, and he advised the plaintiff as to his right to appeal to his, the District Engineer's, superiors, and on, through channels, even to the Secretary of the Army.

■ We think the District Engineer was right. The hearing which the plaintiff claims he was entitled to was not provided for by a statute, but by a regulation of the Department of the Army. An agency which promulgates regulations has the right to give them a rational interpretation, so that compliance with them will not be a useless formality. If a grievance hearing such as the plaintiff requested had been held, the plaintiff would have insisted on threshing over the old straw of the oil burner fire and the reprehensible character of his superiors. The District Engineer knew that those things had nothing to do with the laying up of Unit 221 for lack of work, nor with keeping the plaintiff on his regular salary without a job. A request by an employee for remedial action which a responsible Government superior could not grant without abdicating his responsibility as the superior, does not rationally justify a hearing, and a regulation may be interpreted as not requiring a hearing in such a case.

In fact the plaintiff had all the essentials of a hearing when the Assistant Division Engineer and the Division Personnel Officer went to New Orleans and investigated the plaintiff's grievance. If the plaintiff still thought that his rights had not been accorded him, either procedurally or on the merits, he had two more appeals which he could have taken, if necessary, to the Chief of Engineers and to the Secretary of the Army. The regulations required that he appeal within ten days. Almost a year later he wrote the Department of the Army, re-

fusing to ask the Chief of Engineers for relief because it was the Corps of Engineers that he was accusing of violating his rights. The plaintiff therefore neglected to use the remedial channels that were open to him within his agency.

It will be remembered that the plaintiff did appeal to the Regional Director of the Civil Service Commission, and from him to the Commission, receiving an adverse decision in each case. The Chief Law Officer of the Civil Service Commission, in an opinion which is quoted in finding 29, held that it was immaterial that an agency grievance board had not heard the plaintiff's claim since he had appealed to the Commission, which had final authority to determine the propriety of an alleged reduction-in-force action.

For the several reasons given above, we conclude that no legal wrong was involved in the treatment which the plaintiff received. His petition will, therefore, be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.